EGW/KOH: USAO 2019R00512

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | CRIMINAL NO. GJH 19 cr 370 |
| | * | |
| **JOHN IROGHO** and | * | (Conspiracy to Commit Wire Fraud, |
| **ODINAKA EKEOCHA,** | * | 18 U.S.C. § 1349; Conspiracy to |
| | * | Commit Money Laundering, |
| **Defendants** | * | 18 U.S.C. § 1956(h); Forfeiture, |
| | * | 18 U.S.C. § 981(a)(1)(A) and |
| | * | 981(a)(1)(C), 18 U.S.C. § 982(a)(1), |
| | * | 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |
| | * | |

*******

**INDICTMENT**

**COUNT ONE**
(Conspiracy to Commit Wire Fraud)

The Grand Jury for the District of Maryland charges that:

**Introduction and Background**

At all times relevant to this Indictment:

1. Defendant **JOHN IROGHO** ("**IROGHO**") was a resident of Maryland.

2. Defendant **ODINAKA EKEOCHA** ("**EKEOCHA**") was a resident of Maryland.

3. **Co-Conspirator 1** and **Co-Conspirator 2** were residents of Maryland.

4. The Federal Emergency Management Agency ("FEMA") was an agency of the United States, within the United States Department of Homeland Security ("DHS"), responsible for providing emergency benefits and compensation for damage to victims who were affected by declared national emergency disasters. Among other benefits, an individual in an area affected

by a national disaster was immediately eligible for $500 in compensation, deemed "Critical Needs Assistance" ("CNA"), for the purpose of enabling the purchase of life-saving or life-sustaining materials. The assistance was provided in the form of funds with no spending limitations and was paid to the victim in a manner of his/her choosing, among available options, which could include being paid onto pre-paid debit cards. The servers for FEMA, which were used for processing applications for assistance, were located in Kansas City, Missouri, and Mount Weather, Virginia.

5. The Social Security Administration ("SSA") was an agency of the United States responsible for paying Social Security benefits to, for example, individuals who had met their retirement age and were entitled to retirement benefits. The benefits were paid to each beneficiary in a manner of his/her choosing, among available options, which could include being paid onto pre-paid debit cards.

6. The U.S. Department of Labor, working with its associated entities ("DOL"), was an agency of the United States responsible for administering unemployment and disability compensation benefits to eligible workers. The benefits were paid to the beneficiary in a manner of his/her choosing, among available options, which could include being paid onto pre-paid debit cards.

7. The Internal Revenue Service ("IRS") was an agency of the United States responsible for administering the country's internal revenue laws. If individuals submitted materials indicating that they had paid taxes to the IRS that were determined to exceed the tax liability due and owing, then the individuals would be entitled to refunds of that tax. The refunds were paid to the individual in a manner of his/her choosing, among available options, which could include being paid onto pre-paid debit cards.

8. Green Dot pre-paid debit cards were pre-paid debit cards that could be purchased at convenience stores, pharmacies, grocery stores, and other stores nationwide and, upon registration, could be funded by Automated Clearing House ("ACH") electronic funds transfers in the same manner as a bank account. Green Dot's headquarters, to which electronic communications traveled in connection with each Green Dot debit card transaction, including to have money deposited onto the card, were located in Pasadena, California.

9. Each Green Dot pre-paid debit card had a unique number and had to be loaded with an initial dollar amount by the card purchaser, usually $10 or $20 cash. An individual could then register the card online at GreenDot.com, including from a mobile phone. For registration, individuals were able to use any real individual's name and address.

10. Upon registration of a Green Dot card, Green Dot issued an account number and provided a routing number for Green Dot Bank. Although Green Dot undertook efforts to confirm that the identifying biographical information provided upon registration of a card matched a real person, a Green Dot card, unlike most bank-issued credit and debit cards, did not require such security measures as that an activation code or Personal Identification Number ("PIN") be mailed to the registered cardholder. Rather, each card was sold with a PIN, and individuals could subsequently amend the card's PIN in order to withdraw funds from ATMs or otherwise fund purchases in the manner of a debit card.

11. An individual could put money onto Green Dot debit cards in a variety of manners, including by way of cash or electronically from bank accounts, government agencies, or other sources.

12. For Green Dot debit cards, users were able, if the cards were registered with Green Dot, to log into an online account portal or a mobile application to control funds, as well as to utilize the debit card for purchases and withdrawals.

13. WhatsApp was an encrypted Internet-based multimedia messaging service used via a smartphone application that functioned using both cellular and wireless data connections.

## The Conspiracy

14. From a time unknown to the Grand Jury, but beginning at least in or about March 2015, and continuing through at least in or about August 2018, in the District of Maryland and elsewhere, the defendant,

**JOHN IROGHO,**

did knowingly and willfully combine, conspire, confederate, and agree with **Co-Conspirator 1**, **Co-Conspirator 2**, and others known and unknown to the Grand Jury to commit wire fraud, that is, to devise any scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises ("the scheme to defraud"), and for the purpose of executing and attempting to execute such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343, in relation to, and involving any benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122)).

4

**Manner and Means of the Conspiracy and Scheme to Defraud**

It was part of the conspiracy and scheme to defraud that:

15. In and around 2016, 2017, and 2018, **IROGHO, Co-conspirator 1, Co-conspirator 2**, and other co-conspirators purchased hundreds of Green Dot debit cards at convenience stores, pharmacies, grocery stores, and other stores. Co-conspirators then registered those cards with Green Dot using stolen personally identifiable information ("PII") of victims of identity theft from around the country.

16. Amidst Hurricanes Harvey, Irma, and Maria, and the California wildfires, in 2017, which were presidentially declared major disasters or emergencies, co-conspirators applied online with FEMA for CNA using the stolen PII of additional victims of identity theft, who were eligible for $500 due to those disasters. FEMA paid at least approximately $8 million in amounts of $500 per claim to the Green Dot debit cards, among other pre-paid debit cards, purchased by the co-conspirators.

17. In addition to filing false disaster assistance claims with FEMA, co-conspirators also filed online false claims for Social Security benefits, false claims for IRS tax refunds, and false claims for DOL unemployment and disability benefits using the stolen identities of multiple additional individuals, including name, address, Social Security Number ("SSN"), and other personal identifiers.

18. When filing the claims online, co-conspirators input the account number and routing number from the Green Dot debit card into the claim form in order to receive the disaster assistance or other government program funds such as Social Security benefits, IRS tax refunds, and DOL benefits, on the Green Dot debit card.

19. By virtue of the applications, the federal agencies to whom the applications had been submitted then ACH-deposited claims proceeds directly onto the Green Dot debit cards. Funds were deposited onto the Green Dot debit cards in multiple stolen identities, and in stolen identities that were different from the identities that had been used to register the cards. After the funds were placed onto the Green Dot debit cards, certain co-conspirators then informed other co-conspirators, including **IROGHO, Co-conspirator 1,** and **Co-conspirator 2**, that funds were available on the cards, and provided information to those and other co-conspirators to facilitate "cashing out" the funds from the cards, which **IROGHO, Co-conspirator 1, Co-conspirator 2**, and other co-conspirators did in exchange for a commission.

20. **IROGHO, Co-conspirator 1, Co-conspirator 2**, and other co-conspirators subsequently spent, deposited into bank accounts, and/or "cashed out," through ATM withdrawals or the purchase of money orders, for instance, the funds placed on the pre-paid debit cards, in the District of Maryland and elsewhere. The co-conspirators regularly "cashed out" from cards soon after funds were added to a card.

21. **IROGHO, Co-conspirator 1, Co-conspirator 2**, and other co-conspirators took steps to conceal their identities and the conspiracy and scheme to defraud, such as by enlisting other individuals to make purchases and withdrawals, utilizing multiple different store and bank locations and methods of withdrawal, using multiple different bank accounts (including in the names of corporate entities) and banks, converting funds into cash rather than placing them into bank accounts, and making money orders payable to other individuals and/or corporate entities which they or their co-conspirators controlled.

22. **IROGHO** defrauded the United States and obtained money from the United States both by receiving such funds himself and by enlisting **EKEOCHA, Co-conspirator 1,**

6

and others, known and unknown, to "cash out" stolen funds from Green Dot and other pre-paid debit cards, onto which co-conspirators had loaded those stolen funds.

23. **IROGHO, EKEOCHA, Co-conspirator 1, Co-conspirator 2**, and other co-conspirators communicated by way of WhatsApp, e-mail, and other methods in furtherance of the scheme.

24. **IROGHO, EKEOCHA, Co-conspirator 1, Co-conspirator 2**, and other co-conspirators used stolen federal funds from the scheme to pay rental and housing expenses, to purchase used vehicles, and for other purposes.

## Overt Acts

25. In furtherance of the conspiracy and scheme to defraud, and to effect the objects thereof, **IROGHO, Co-conspirator 2**, and other persons known and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in the District of Maryland and elsewhere:

Green Dot debit card ending in 8577

a. On or about September 23, 2017, a co-conspirator purchased the Green Dot debit card ending in 8577 at a convenience store in Temple Hills, Maryland, and a co-conspirator registered the card under the stolen identity of Victim 1 of Nevada.

b. On or about September 23, 2017, **IROGHO** sent **Co-Conspirator 2** a WhatsApp text message that included the full account number for the card, as well as the card's expiration date and card verification value ("CVV").

c. On or about September 24, 2017, **Co-Conspirator 2** sent a co-conspirator in Nigeria a WhatsApp text message that included the same information.

7

d. On or about September 25, 2017, a co-conspirator used that card to register for $500 in FEMA immediate disaster assistance under the stolen identities of Victim 2 of Texas and Victim 3 of Florida.

e. On or about September 26, 2017, and October 2, 2017, respectively, FEMA paid money to the card on behalf of Victim 3 and Victim 2.

Green Dot debit card ending in 8398

f. On or about July 28, 2017, a co-conspirator purchased the Green Dot debit card ending in 8398 at a convenience store in Laurel, Maryland, and a co-conspirator registered the card under the stolen identity of Victim 4 of Washington.

g. On or about that same date, **Co-Conspirator 2** sent a WhatsApp text message to a co-conspirator, at an international telephone number, containing the full account number for the card, as well as the card's expiration date and CVV.

h. On or about September 27, 2017, a co-conspirator used that card to register for $500 in FEMA immediate disaster assistance under the stolen identity of Victim 5 of Texas. On or about October 4, 2017, FEMA paid money to the card on behalf of Victim 5.

i. On or about October 8, 2017, the co-conspirator at the international telephone number mentioned above sent the card information back to **Co-Conspirator 2** via a WhatsApp text message, and minutes later **Co-Conspirator 2** sent **IROGHO** a WhatsApp text message that included the card information. **Co-Conspirator 2** also sent **IROGHO** card information for additional Green Dot debit cards at around the same time.

18 U.S.C. § 1349

## COUNT TWO
### (Conspiracy to Commit Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 13 and 15 through 25 of Count One are incorporated here.

2. From a time unknown to the Grand Jury, but beginning at least in or about 2016 and continuing until at least in or about August 2018, in the District of Maryland and elsewhere, the defendants,

### JOHN IROGHO and
### ODINAKA EKEOCHA,

did knowingly conspire with each other and other persons known and unknown to the Grand Jury to conduct and attempt to conduct a financial transaction, affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity—to wit, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, as set forth in Count One and incorporated here—while knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and

 a. with the intent to promote the carrying on of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

 b. knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### Manner and Means of the Conspiracy

3. It was part of the conspiracy that the defendants and their co-conspirators spent, deposited into bank accounts, and/or "cashed out," through ATM withdrawals or the purchase of money orders, for instance, the funds placed on the pre-paid debit cards, in the District of

Maryland and elsewhere. The co-conspirators regularly "cashed out" from cards soon after funds were added to a card.

4. It was further part of the conspiracy that **IROGHO, Co-conspirator 1, Co-conspirator 2**, and other co-conspirators took steps to conceal their identities and the conspiracy and scheme to defraud, such as by enlisting other individuals (including **EKEOCHA**) to make purchases and withdrawals, utilizing multiple different store and bank locations and methods of withdrawal, using multiple different bank accounts (including in the names of corporate entities) and banks, converting funds into cash rather than placing them into bank accounts, and making money orders payable to other individuals and/or corporate entities which they or their co-conspirators controlled.

### Overt Acts

5. In furtherance of the conspiracy, and to effect the objects thereof, the defendants, and others known and unknown to the Grand Jury, committed and caused to be committed the following acts, among others, in the District of Maryland and elsewhere:

<u>Green Dot debit card ending in 5828</u>

a. On or about May 20, 2017, after a co-conspirator used the Green Dot debit card ending in 5828 to apply for tax refund payments under the stolen identity of Victim 6 of Arizona as part of the scheme to defraud (which the IRS paid to the card on or about May 19, 2017, in the amount of $9,747), a co-conspirator used the card to withdraw $2,900 through the purchase of six Western Union money orders at grocery stores in Bowie, Maryland, and Dunkirk, Maryland, which money orders were written to **IROGHO**.

b. Between on or about May 31, 2017, and on or about June 6, 2019, **IROGHO** deposited those six money orders into one of his bank accounts at Wells Fargo.

c. On or about May 21, 2017, a co-conspirator used the card to purchase a MoneyGram money order in the amount of $1,200 at a grocery store in Alexandria, Virginia, which money order was also written to **IROGHO** and negotiated at Wells Fargo.

Green Dot debit card ending in 7436

d. On or about August 12, 2017, and August 13, 2017, after a co-conspirator used the Green Dot debit card ending in 7436 to apply for Social Security benefits under the stolen identity of Victim 7 of New Jersey as part of the scheme to defraud (which the SSA paid to the card on or about August 11, 2017, in the amount of $13,470), a co-conspirator withdrew approximately $4,700 of that money from the card through the purchase of approximately ten Western Union money orders at a grocery store in District Heights, Maryland, which money orders were written to **IROGHO**.

e. On or about August 14, 2017, **IROGHO** deposited at least four of those money orders into one of his bank accounts at Wells Fargo.

Green Dot debit card ending in 7217

f. On or about May 19, 2017, after a co-conspirator used the Green Dot debit card ending in 7217 to apply for tax refunds under the stolen identity of Victim 8 of Maryland as part of the scheme to defraud (which the IRS paid to the card on or about that same date in the amount of $3,212), **EKEOCHA**, having been enlisted by **IROGHO**, withdrew $1,500 from the card by the purchase of three Western Union money orders at a grocery store in Laurel, Maryland. **EKEOCHA** wrote a different name and address as purchaser on each money order, one of which was related to **IROGHO**, and none of which was **EKEOCHA**'s own.

<u>Green Dot debit card ending in 3407</u>

  g.  On or about May 21, 2017, after a co-conspirator used the Green Dot debit card ending in 3407 to apply for tax refunds under the stolen identity of Victim 9 of Maryland as part of the scheme to defraud (which the IRS paid to the card on or about that same date in the amount of $4,925), **EKEOCHA**, having been enlisted by **IROGHO**, used the card to withdraw $450 of that money from the card by the purchase of a Western Union money order at a grocery store in Bowie, Maryland. **EKEOCHA** wrote a name and address as purchaser on the money order that was not his own.

18 U.S.C. § 1956(h)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 982(a)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendants' convictions on Counts One and Two of this Indictment.

### Fraud Forfeiture

2. As a result of the offense set forth in Count One of this Indictment, the defendant,

### JOHN IROGHO,

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, and all interest and proceeds traceable thereto.

### Money Laundering Forfeiture

3. As a result of the offense set forth in Count Two of this Indictment, the defendants,

### JOHN IROGHO and
### ODINAKA EKEOCHA,

shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

4. The property to be forfeited includes, but is not limited to, the following:

   a. 4812 Ashford Place, Upper Marlboro, MD 20772;

   b. All property constituting the subject matter of the money laundering offenses; and

      c.      All property used to commit or to facilitate the commission of the money laundering offenses.

### Substitute Assets

5. If, as a result of any act or omission of any defendant, any of the property described above as being subject to forfeiture:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty,

the United States of America, pursuant to 21 U.S.C. § 853(p), shall be entitled to forfeiture of substitute property.

18 U.S.C. § 981(a)(1)(A)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Robert K. Hur* by EW
_____
Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**
Foreperson

Date: July 31, 2019